IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN DOUGLAS THORNBERG, )
    Plaintiff, )
     )
    v. ) 2:11-CV-570
     )
MICHAEL J. ASTRUE, )
COMMISSIONER OF SOCIAL )
SECURITY, )
    Defendant. )

MEMORANDUM and ORDER

Mitchell, M.J.:

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below the plaintiff's Motion for Summary Judgment (Docket No.11) will be granted; the defendant's Motion for Summary Judgment (Docket No.13) will be denied and the decision of the Commissioner will be reversed.

On May 2, 2011, John Douglas Thornberg, by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On September 18, 2006, the plaintiff filed an application for disability benefits alleging that he had been disabled since June 30, 2006 (R.124-126), and benefits were denied on December 19, 2006 and again denied upon reconsideration on November 27, 2007 (R.78-82, 85-91). On December 13, 2007, the plaintiff requested a hearing (R.93) and pursuant to that request a hearing was held on February 26, 2009 (R.30-74). In a decision dated March 13, 2009,

benefits were denied (R.16-29), and on March 20, 2009, reconsideration was requested (R.15). Upon reconsideration and in a decision dated March 15, 2011, the Appeals Council affirmed the prior determination (R.2-4). On May 2, 2011, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

At the hearing held on February 26, 2009 (R.30-74), the plaintiff appeared with counsel (R.32) and testified that he was born on December 3, 1971 (R.40); that he graduated from college with a chemistry major (R.40) that he worked from June 2000 through April 2001 as a technical services representative for an internet domain provider (R.41) and that he worked as a customer services representative from November 2002 through February 2003 (R.43).

The plaintiff also testified that he experiences anger management issues (R.44); that he experiences constant severe back pain which radiates to his leg (R.44,47); that he takes

medication for pain (R.47); that he has a bipolar disorder which exhibits more depressive than manic states (R.44-45); that he harms himself (R.46); that he can stand for about fifteen minutes (R.48); that he does not perform any household chores (R.49); that he was injured on March 6, 2006 while digging a ditch (R.50-51); that he attends physical therapy (R.57) and that he sleeps a lot due to his medications (R.60).

At the hearing a vocational expert was called upon to testify (R.64-71). He described the plaintiff's former work as sedentary to light skilled work (R.65). The witness was asked to assume an individual who could engage in light exertional work with the ability to stand and walk as well as sit and the witness testified that such a person could not perform the plaintiff's past work (R.66-67). However, the witness also testified that such an individual could perform a wide range of sedentary work (R.67-69). The witness also testified that if the plaintiff's testimony was totally credited, he could not be gainfully employed (R.70).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff received routine treatment at Kaiser Permanente between January 7, 2006 and February 6, 2006. His primary diagnosis was lumbar radiculopathy (R.235-362).

The plaintiff received epidural injections for right leg and knee pain at Fairfax Anesthesia Associates between February 3, 2006 and February 28, 2006 (R.363-384).

The plaintiff was treated for back and leg pain at the Prince William Hospital between March 31, 2006 and April 7, 2006. He was also diagnosed with morbid obesity. It was also observed that the plaintiff's reports of pain were out of proportion to his symptoms (R.385-481).

In a range of motion report completed on August 21, 2006, all motion was noted to be "normal" (R.482).

The plaintiff was treated for back and leg pain at Northern Virginia Orthopedics between February 27, 2006 and August 21, 2006. Exercise and physical therapy as opposed to surgery were recommended. Steroid injections were also administered. A diagnosis of multilevel lumbar disc herniations and degenerative disc disease was made (R.483-514).

In a disability report dated September 11, 2006 Dr. Steven C. Scherping reported low back pain but no acute distress; diminished range of motion in the lumbar spine and disc herniations at L3-4 and L4-5. Dr. Scherping recommended that no surgery be performed but suggested a pain management program and weight loss (R.520-523).

The plaintiff was treated at the Gainsville Family Practice between February 27, 2006 and September 27, 2006 for general ailments and orthopedic problems (R.524-573).

The plaintiff was treated for an ulcer at the offices of Associates in Gastroenterology between March 31, 2006 and September 27, 2006 (R.574-589).

The plaintiff was treated at the Nova Advanced Pain Management Center between February 27, 2006 and October 4, 2006 for back and leg pain. Epidural steroid injections were provided for pain relief (R.590-608).

In a report of a psychiatric evaluation conducted on October 19, 2006 a bipolar disorder was noted (R.515-519).

In a report from the Day Break Counseling Services covering treatment between August 30, 2006 and October 19, 2006 a bipolar disorder was diagnosed (R.637-643).

The plaintiff was treated at the Prince William Counseling Center between September 18, 2006 and October 20, 2006 for a bipolar disorder. Medication was prescribed (R.609-616).

The plaintiff was treated at the Jackson Clinics between February 27, 2006 and October 25, 2006 where he received physical therapy (R.617-636).

In a report covering treatment at the Center for Psychiatry covering the period from September 18, 2006 through November 6, 2006 a bipolar disorder was diagnosed (R.644-652).

The plaintiff was treated at the Prince William Hospital between March 10, 2006 and November 9, 2006 for lumbar disc disease with radiculopathy, and an ulcer. Steroidal injections were provided for pain (R.653-738).

In a report of a residual functional capacity assessment completed on December 1, 2006, it is noted that the plaintiff could occasionally lift ten pounds, stand or walk at least two hours if he was able to alternate sitting and standing which could be accommodated by normal breaks. It was also reported that the plaintiff's claims of daily activity limitations were credible (R.739-745).

In a report of a psychiatric review performed on December 7, 2006 an affective bipolar disorder was noted which was said to impose no to moderate limitations (R.746-763).

The plaintiff attended Day Break Counseling between August 30, 2006 and July 3, 2007 (R.957-962).

The plaintiff was treated at the Gainsville Family Practice between October 19, 2006 and February 7, 2007 for radiculopathy, disc herniation and medial epicondylitis (R.764-773).

The plaintiff attended the Prince William Counseling Center between September 18, 2006 and February 9, 2007 where he was regarded as disabled by his bipolar disorder. Medication was prescribed (R.774-795).

The plaintiff was treated by Dr. Deeni Bassam on May 24, 2007 who diagnosed spondylosis, degenerative disc disease and low back pain (R.796-800).

The plaintiff was treated by Dr. Atul V. Marathe between September 13, 2006 and June 15, 2007 for epigastric pain and diarrhea. Intestinal and bowel biopsies were negative (R.1054-1057).

The plaintiff was treated at the Prince William Hospital Counseling Center between September 18, 2006 and July 20, 2007 for bipolar disorder. Medication was prescribed (R.816-833).

The plaintiff was treated at the Gainsville Family Practice between February 16, 2006 and July 30, 2007 for cellulitis, back pain, radiculopathy, disc herniation, medial epicondylitis, pharyngitis, migraine, thrush, insomnia, depression and anxiety (R.834-898).

Nerve blocks were administered at the Prince William Hospital between May 24, 2007 and August 14, 2007 (R.801-813).

In a report of an examination conducted on October 23, 2007, Dr. Richard M. Hahn diagnosed a bipolar disorder, low back pain and marked obesity even after gastric bypass surgery. It was noted that the plaintiff could occasionally lift up to twenty-five pounds, stand or walk for up to three hours and had no sitting limitations (R.899-906).

In a report of a psychological evaluation dated November 1, 2007, T. David Newman, Ph.D. diagnosed a bipolar disorder, somatic pain and a borderline personality disorder (R.907-912).

In a report of a mental residual functional capacity assessment completed on November 5, 2007, Roger Glover, Ph.D. noted a bipolar disorder, unstable relationships, and a substance abuse disorder. The plaintiff's limitations were said to be moderate or less and he concluded "the claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment" (R.913-915, 943-956).

In a November 5, 2007 residual functional capacity assessment it is noted that the plaintiff could occasionally life twenty pounds, frequently lift ten pounds, stand or walk at least two hours and sit for about six hours. The plaintiff's allegations of pain were deemed to be only partially credible (R.916-922).

The plaintiff received physical therapy at the Jackson Clinic between February 27, 2006 and November 15, 2007 (R.923-942).

The plaintiff was treated by Dr. Salari between November 8, 2007 and May 15, 2008 for a lumbar disc disorder, low back pain, right hip and left shoulder pain. He received injections for the pain (R.1058-1070).

The plaintiff was treated at the Prince William Counseling Center between March 30, 2007 and May 21, 2008 for depression and anxiety, and a bipolar disorder. He received medication (R.963-968, 1071-1089, 1211-1229).

The plaintiff was treated by Jennifer M. Ludrosky, Ph.D. between October 25, 2007 and July 10, 2008 for his bipolar disorder (R.969-997).

The plaintiff received treatment from Dr. Deeni Bassam between July 13, 2006 and September 4, 2008 for his bipolar disorder. He received medication, physical therapy and psychotherapy (R.1090-1101, 1102-1155, 1157-1210).

The plaintiff was treated by Dr. Dylan Deatrich between October 24, 2007 and September 19, 2008 who noted his major problems as left arm and shoulder tremors. Medication was prescribed (R.999-1053).

In a psychological report of biweekly treatment a for bipolar disorder during the period from October 25, 2007 through January 20, 2009, the plaintiff's condition was described as extremely severe at times, and his limitations were said to range from none to marked (R.1388-1395).

The plaintiff was treated at Tri-State Health Associates between September 24, 2007 and January 28, 2009 for low back pain. Spinal manipulations were performed (R.1247-1380).

In a spinal impairment questionnaire completed on February 18, 2009, Dr. Franklin Hughes diagnosed lumbar spinal spondylosis, lumbar facet syndrome, radiculopathy and joint dysfunction. It was noted that the plaintiff could frequently lift or carry five pounds, occasionally lift up to twenty pounds, sit for four hours and stand or walk for two hours. It was reported that the plaintiff was unable to tolerate stress (R.1381-1387).

In a psychological report dated February 26, 2009, Jennifer M. Ludrosky noted that the plaintiff's episodes of depression occur two to three times a year and last four to six weeks per episode during which time he experiences very low mood, anhedonia, memory and concentration difficulties, social withdrawal, sleep and eating disruption, suicidal ideation and very low energy. She noted that his functioning was limited by the unpredictability of his moods (R.1396).

In a multiple impairment questionnaire dated March 5, 2009 and covering treatment between 2006 and March 5, 2009, Dr. Manoj Patel diagnosed a bipolar disorder with a poor prognosis and observed that the plaintiff was only able to sit, stand or walk for less than an hour. He also observed that the plaintiff could only lift or carry up to five pounds. Dr. Patel concluded that the plaintiff was unable to work (R.1397-1404).

The plaintiff received chiropractic treatment from Franklin Hughes, D.C. for low back pain between March 24, 2009 and August 24, 2009 (R.1419-1432).

In a report of a May 12, 2010 evaluation, Ronald Sherman, Ph.D. diagnosed a bipolar disorder and indicated no limitation to marked limitation on the plaintiff's ability to function. He concluded that the plaintiff "was totally disabled emotionally and unable to function in any capacity… the present degree of severity of his mental illness has existed since 07/03/2006" (R.1406-1417).

The plaintiff was treated by Dr. Dylan P. Deatrich between November 20, 2007 and June 25, 2010 for medication refills and B-12 injections for various ailments but primarily for back pain (R.1230-1246,1433-1497,1511-1561).

In a report of treatment rendered between January 15, 2009 and August 23, 2010, Dr. M.P. Patel diagnosed a bipolar disorder and depression. Medication was prescribed (R.1563-1571).

In a report covering the period between July 23, 2008 and August 26, 2010 Jennifer Ludrosky, Ph.D. diagnosed depression and a bipolar disorder. Individual therapy was provided (R.1572-1624).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit--but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the

strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made.  If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.
>
> The claimant has not engaged in substantial gainful activity since June 30, 2006, the alleged onset date.
>
> The claimant has the following severe impairments: obesity; degenerative lumbar disc disease at L3-4 and L4-5; and a bipolar disorder…
>
> Despite undergoing gastric bypass surgery in January 2002, the claimant testified at the February 26, 2009 hearing that he weighed 419 pounds …
>
> Regarding the claimant's lumbar impairment, the objective medical evidence of record does not show compromise of any nerve root or the spinal cord in the lumbar spine, appropriate evidence of nerve root compression, or pseudoclaudication resulting in an inability to ambulate effectively necessary to meet or medically equal the criteria of Listing 1.04, even when considering the claimant's obesity.
>
> Assessing the claimant's bipolar disorder under the "B" criteria of Listing 12.04, the claimant has mild restrictions of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Further, the evidence does not establish the "C" criteria of Listing 12.04. In so finding, great weight has been given to the psychiatric review technique form assessments completed by two reviewing psychologists for the state agency, who also assessed

the same "B" criteria limitations. These assessments are supported by the longitudinal medical evidence of record showing good stability on medications with the claimant presenting with few significant abnormal objective clinical signs upon examination, which is not consistent with the claimant's subjective complaints of debilitating bipolar symptoms including rapid cycling, angry outbursts and an inability to concentrate, to which he testified.

Furthermore, the … assessments are consistent with the consultative psychological evaluation completed by examining psychologist T. David Newman, Ph.D., on November 1, 2007. Dr. Newman's mental status examination reported that the claimant had adequate personal hygiene and grooming, which contradicts the claimant's testimony that he neglects his personal grooming due to depression, which was not mentioned by Dr. Newman, and supports the finding of mild restrictions of activities of daily living. In fact, the claimant presented on November 1, 2007 with a normal mood, described by Dr. Newman as "essentially euthymic." The claimant's only work related limitation reported to Dr. Newman was that he is unable to focus "enough to do a normal job," yet he had no significant problems during the evaluation, with Dr. Newman assessing only mild to moderate disturbance of concentration, secondary to his medications. Dr. Newman found that the claimant had normal memory functioning. Dr. Newman also noted that the claimant's reports of impulse control difficulties and having problems with rage were not consistent with the claimant's history of no altercations requiring police interaction, and Dr. Newman further reported that the claimant's social judgment was intact. Based upon the objective clinical signs observed during the evaluation, Dr. Newman reported that the claimant's bipolar disorder was stable on his prescribed medications with the clamant "maintaining a reasonable 'equilibrium' of mood," and he opined that the claimant would have no significant problems in maintaining concentration and pace for completing simple repetitive tasks, but not complex detailed work, which is consistent with the finding of moderate difficulties in maintaining concentration, persistence or pace. However, apparently accepting some of the claimant's subjective reports in that his mental status evaluation was relatively benign, Dr. Newman assessed moderate difficulties in social functioning in the examining psychologist's medical source statement which supports the finding of moderate difficulties in maintaining social functioning. Finally, the reviewing psychologists are mental health specialists who are opining in their specialty and have an understanding of the disability programs and their evidentiary requirements.

As noted above, the claimant testified that he continues to experience rapid cycling of his moods. During depressive states, he claims to disregard personal hygiene, becomes easily irritated having angry outbursts with thoughts of harming himself and others, and does not leave his house. He then claims to quickly go into a manic phase wherein he goes out shopping, is impulsive, and is unable to perform even simple tasks. These extreme complaints are respectfully found by

the undersigned not to be entirely credible and appear to be significantly exaggerated for a secondary gain motivation to obtain disability benefits…

Prior to September 18, 2006, Dr. Millis noted that the claimant had seen psychiatrists on and off for 10 years, but was now complaining of increased symptoms of anxiety and depression. However, the mental status evaluation on that date was essentially normal except for a depressed mood… Furthermore, there were no deficits noted regarding the claimant's memory, attention and concentration, with his intelligence level estimated to be average. Based solely upon the claimant's subjective complaints given the essentially normal mental status evaluation, Dr. Millis diagnosed a bipolar disorder and assessed an extreme GAF [global assessment of function] of 35. Given the claimant's lack of credibility and the lack of supporting objective clinical signs, this extreme GAF assessment is not accepted … having last seen the claimant on July 30, 2007… Dr. Millis completed a discharge summary nearly 10 months later on May 21, 2008 with a diagnosis of bipolar disorder, mixed and a moderately severe GAF of 50, which again appears to overstate the claimant's mental limitations given the lack of objective clinical signs, including the intervening evaluation and assessment by Dr. Newman in November 2007 … which is entitled to great weight…

After moving to Pennsylvania, the claimant started treating with Dr. Patel on October 2, 2007, at which time the claimant again had extreme subjective complaints yet had a relatively benign mental status evaluation from an objective standpoint. However, again based primarily upon the claimant's subjective complaints, which are respectfully found not to be very credible, Dr. Patel also assessed a very severe GAF of 40, which is not accepted in that it lacks objective support in the medical evidence of record, including Dr. Patel's subsequent treatment records…

Since October 25, 2007, the claimant also received therapy from psychologist Jennifer Ludrosky, Ph.D., having been referred by Dr. Patel. While the claimant continued with his rather extreme subjective complaints, objectively, his mental status examination was relatively benign …despite a lack of supporting objective clinical signs reported in the longitudinal treatment records, Dr. Ludrosky completed a MSS and authored a letter dated February 26, 2009, supporting the claimant's disability claim by parroting the claimant's extreme and unsupported subjective complaints and purported debilitating limitations, which are not very credible, and opining that the claimant has marked limitations in social functioning, concentration and persistence. Therefore, little to no weight is given to these assessments by Dr. Ludrosky…

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work ... [but]

would require an option to stand up or sit down on occasion during the workday…

As with his subjective complaints regarding his bipolar disorder, the claimant is likewise significantly exaggerating his pain complaints for secondary gain …

The claimant's primary treatment since moving to Pennsylvania is from a chiropractor, who is not an acceptable medical source under the regulations…

On the other hand, great weight has been given to the residual functional capacity assessments by the reviewing physicians for the state agency who also found the claimant to be partially credible and capable of performing a range of at least sedentary work with a sit/stand option consistent with the residual functional capacity as found. Similarly, great weight has been given to the mental residual functional capacity assessments by the same reviewing psychologists who completed the PRTF assessments, also finding the claimant partially credible and capable of performing work consistent with the residual functional capacity as found…

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate… (R.21-29).

The record demonstrates that while the plaintiff experience serious skeletal limitations they in and of themselves do not appear to be disabling. More troubling is his bipolar disorder for which he has received extensive treatment including psychotherapy and medication.

A diagnosis of a bipolar disorder was made in 2006 (R.515-519, 637-643, 644-652) and was reiterated repeatedly after that time. In a report covering the 2007 to 2009 period is was observed that his mental condition was extremely severe (R.1388-1395); in 2009 the prognosis was poor and it was represented that he was unable to work due to physical and mental problems (R.1397-1404) and on May 12, 2010 it was reported that he was unable to function in any

capacity (R.1406-1417). These reports were submitted by treating physicians and counselors. Contrary to these findings the severity of the plaintiff's problems were downgraded by non-treating individuals (R.913-915; 943-956). Thus the totality of the evidence submitted by treating physicians/counselors supports the conclusion that the plaintiff is disabled as a result of his bipolar disorder.

It is only by concluding that the plaintiff is a malingerer and drawing selective representations from the reports of non-treating individuals, that the Commissioner was able to conclude that the plaintiff was not disabled. In fact, in accepting these contrary reports, the administrative law judge also appears to have explicitly rejected statements which did not support her conclusion. As the Court observed in Morales v. Apfel, 225 F.3d 310, 317-319 (3d Cir.2000):

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time" (citing cases). Where, as here, the opinion of a treating physician conflicts with that of a non-treating physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." (citing cases). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled… In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion…
>
> The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability…

Thus it is only by rejecting the findings and conclusions of treating medical personnel and picking and choosing from sections of the non-treating evaluators, that the Commissioner was able to conclude that the plaintiff was not disabled. The record simply does not support this conclusion.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. <u>Lamont v. New Jersey,</u> 637 F.3d 181 (3d Cir. 2011). In the instant case, there are no material factual issues in dispute, and it appears as a matter of law that the conclusion of the Commissioner is not supported by substantial evidence.

Accordingly, the plaintiff's Motion for Summary Judgment (Docket No.11) will be granted; the defendant's Motion for Summary Judgment (Docket No.13) will be denied and the decision of the Commissioner will be reversed.

An appropriate Order will be entered.

ORDER

AND NOW, this 9th day of November, 2011, for the reasons set forth in the foregoing Memorandum, IT IS ORDERED that the plaintiff's Motion for Summary Judgment (Docket No.11) is GRANTED; IT IS FURTHER ORDERED that the defendant's Motion for Summary Judgment (Docket No.13) is DENIED; AND IT IS FURTHER ORDERED that the determination of the Commissioner to deny benefits is REVERSED.

                                                                            s/ Robert C. Mitchell
                                                                            United States Magistrate Judge